# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

ECOFACTOR, INC.,

                     Plaintiff,

       v.

ECOBEE, INC.,

                   Defendant.

Case No. 6:20-cv-00078-ADA

███████████

**PLAINTIFF ECOFACTOR, INC.'S MOTION TO EXCLUDE EXPERT OPINIONS OF
ECOBEE'S DAMAGES EXPERT MICHELE RILEY**

# **TABLE OF CONTENTS**

**Page(s)**

I.      INTRODUCTION ......................................................................................................... 1

II.     ARGUMENT ................................................................................................................. 2

    A.      Ms. Riley's Opinion Is Based on An Analysis of the Wrong Product ......................... 2

    B.      Ms. Riley Should Not Be Permitted to Rely on Usage Data That Was Withheld Until
    After the Close of Fact Discovery and Opening Reports, and of Which She Has No
    Understanding ................................................................................................................ 7

    C.      Ms. Riley's Discussion of Economically Non-Comparable Transactions and
    Valuations Should Be Excluded .................................................................................. 11

        1.      The Trane Asset Purchase Agreement ............................................................. 11

        2.      The Bidgely Collaboration Agreement ............................................................. 15

        3.      Common Stock Valuations ............................................................................... 15

III.    CONCLUSION ............................................................................................................ 16

## **TABLE OF AUTHORITIES**

**Cases**

*Bitterroot Holdings, L.L.C. v. MTGLQ Inv'rs, L.P.*,
    648 F. App'x 414 (5th Cir. 2016) ................................................................. 9

*Brown v. AT&T Serv. Inc.*,
    236 F. Supp. 3d 1000 (S.D. Tex. 2017) ..................................................... 9

*Commonwealth Sci.& Indus. Research Org. v. Cisco Sys., Inc. (CSIRO)*,
    809 F.3d 1295 (Fed. Cir. 2015) .................................................................. 3

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp.*, LLC,
    879 F.3d 1332 (Fed. Cir. 2018) .................................................................. 4

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010) ................................................................ 12

*General Electric Co. v. Joiner*,
    522 U.S. 136 (1997) .................................................................................. 7

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ................................................................ 3, 12

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ........................................................... 12, 14

*Maguregui v. ADP, LLC*,
    No. EP-16-CV-121-PRM, 2017 WL 5473484 (W.D. Tex. Apr. 10, 2017) ............... 9

*Mformation Techs., Inc. v. Rsch. in Motion Ltd.*,
    No. C 08-04990 JW, 2012 WL 2339762 (N.D. Cal. June 7, 2012) ...................... 15

*ProTradeNet, LLC v. Predictive Profiles, Inc.*,
    No. 6:18-CV-00038-ADA, 2019 WL 6499488 (W.D. Tex. Oct. 11, 2019) .......... 7, 14

*Summit 6, LLC v. Samsung Elecs. Co.*,
    802 F.3d 1283 (Fed. Cir. 2015) .................................................................. 7

*ThinkOptics, Inc. v. Nintendo of Am., Inc.*,
    No. 6:11-CV-455, 2014 WL 2859578 (E.D. Tex. June 21, 2014) ................. 3, 5, 7

*Trustees of Bos. Univ. v. Everlight Elecs. Co.*,
    141 F. Supp. 3d 147 (D. Mass. 2015) ....................................................... 11

*Uniloc U.S.A. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ............................................................... 11

*United States v. Brownlee*,
    744 F.3d 479 (7th Cir. 2014) ................................................................... 11

**Statutes**

35 U.S.C. § 284 ............................................................................................. 3

**Rules**

Fed. R. Civ. P. 37(c)(1) ................................................................................ 9
Federal Rule of Civil Procedure 26 ...................................................... 1, 9, 10
Federal Rule of Civil Procedure 37 ...................................................... 1, 2, 10
Federal Rule of Evidence 702 ........................................................... 1, 2, 7, 10

## I.     INTRODUCTION

Plaintiff EcoFactor, Inc. ("EcoFactor") hereby moves to exclude expert opinions of ecobee, Inc. ("ecobee")'s damages expert Michele Riley, pursuant to Federal Rule of Evidence 702 and Federal Rules of Civil Procedure 26 and 37.  Ms. Riley's opinions are deficient for three reasons.

First, Ms. Riley's damages opinion on the '382 patent is based on an analysis that focuses on the wrong product.  Ms. Riley bases her rate on the operating profits from an external sensor sometimes used with the accused products.  But the accused products in this case, and the undisputed smallest salable patent practicing unit, are four models of ecobee thermostats connected to ecobee's backend servers.  The external sensor on which Ms. Riley bases her opinion is sometimes, but not always, necessary for infringement by one of the four accused models.  It is, however, much less expensive than the accused thermostats, allowing Ms. Riley to depress her royalty rate.  By focusing on this single component, while ignoring most, and sometimes all, of the infringing components, Ms. Riley fails to tie her damages opinion to the claimed invention's footprint in the market place, and thus her reasonable royalty fails to award EcoFactor damages adequate to compensate for ecobee's infringement.  Her royalty opinion as to the '382 patent should therefore be excluded.

Second, Ms. Riley's calculation of the royalty base for both patents in suit is based on usage data first produced the same day as her rebuttal report.  Ms. Riley uses this data to exclude from the base over 80% of units sold of one of the accused models.   This data is responsive to several of EcoFactor's discovery requests, and by withholding it until the issuance of its rebuttal expert reports, ecobee deprived EcoFactor of the ability to inquire into the basis for, and reliability of, the data.  Moreover, Ms. Riley herself has no real understanding of the document,

and no basis on which to rely on it.  The document, and Ms. Riley's discussion of it, should be excluded under Rule 37, and Ms. Riley's opinions based on the document should be excluded under Rule 702.

Third, Ms. Riley relies on transactions and valuations that she admits are not comparable to the hypothetical negotiation.  Among other non-comparable inputs, she relies on an asset purchase agreement that expressly states that none of the consideration provided therein is related to patent rights, and a patent license that is a sub-part of this larger deal and that includes no royalty provision at all.  Ms. Riley also relies on a one line "valuation" of EcoFactor's entire patent portfolio made in the context of this non-comparable transaction, and then asserts without evidence that this document shows what EcoFactor would accept for any one of its patents.

Ms. Riley's opinions are contrary to law and the record, and methodologically deficient. These opinions should therefore be excluded.

## II.   ARGUMENT

### A.   Ms. Riley's Opinion Is Based on An Analysis of the Wrong Product

Ms. Riley's reasonable royalty opinion for the '382 patent is based on an analysis of ecobee's operating profit on external sensors that are sold separately from the accused thermostats.  Ms. Riley's analysis determines that the operating profit of the external sensors attributable to the accused feature is ███████, and then opines that downward pressure from considerations of *Georgia Pacific* factors 5, 8, and 13 would lead the parties to the hypothetical negotiation to agree to lower that rate to ███████, which she then applies to the number of

---

[1] Ms. Riley actually apportions down to ███ of the operating profit from the sensors, by dividing by two and then taking ███ of what remains, before further reducing the resulting rate by ███ in her *Georgia Pacific* analysis.  Ex. A, ¶¶ 167-168.

accused units sold through June 2021.  Ex. A, October 22, 2021 Expert Rebuttal Report on Damages, Michele M. Riley ("Riley Rpt.")  ¶¶ 214-217 & Exhibit 1 to Riley Report.[2]

However, the accused products in this case are not external sensors, they are smart thermostats connected to back-end servers.  The external sensor on which Ms. Riley relies is not coterminous with the smallest salable patent practicing unit ("SSPPU") in this case, nor does it represent the apportionment of infringing and non-infringing features or components of the accused products, or an apportionment to the novel element of the claims.  Moreover, only 1 of the 4 accused models of ecobee's thermostats requires the external sensor on which Ms. Riley relies in order to infringe the '382 patent – the others have internal sensors.  Ms. Riley simply uses the wrong product, with no rational justification, apparently because the sensor is far less expensive than the actual accused product or SSPPU, and so a royalty rate based on profits from the sensor is also far lower than a rate based on profits from the accused product would be.

Ms. Riley's focus on the wrong product is improper as a matter of saw, as it fails to follow the Federal Circuit's instruction that a damages opinion must be "'carefully tie[d] . . . to the claimed invention's footprint in the market place,'" and thus her reasonable royalty fails to "'award the claimant damages adequate to compensate for infringement.'" *ThinkOptics, Inc. v. Nintendo of Am., Inc.*, No. 6:11-CV-455, 2014 WL 2859578, at *2 (E.D. Tex. June 21, 2014), *quoting LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) and 35 U.S.C. § 284.  To that end, the starting point of a reasonable royalty analysis is the smallest salable patent practicing unit ("SSPPU").  *Commonwealth Sci.& Indus. Research Org. v. Cisco Sys., Inc. (CSIRO)*, 809 F.3d 1295, 1302 (Fed. Cir. 2015). What is "patent practicing" is, of

---

[2] Unless indicated otherwise, all citations to exhibits herein are to the Declaration of Reza Mirzaie in support of this motion.

course, defined by the claims. *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp.*, LLC, 879 F.3d 1332, 1348 (Fed. Cir. 2018).

While the '382 patent includes the word "Sensor" in its title, the claims refer to a system comprising memory and processors, which in this case are contained in the accused thermostats and the backend servers to which they are connected. *See, e.g.*, Ex. C, Expert Report of Robert Zeidman Regarding Infringement By Ecobee ("Zeidman Rpt.") ¶ 223 (on the claim 1 preamble, "Each ecobee thermostat is designed to be wired to a customer's HVAC equipment. . ."); ¶¶ 229-230 (on claim element 1[a], "memory" is in the ecobee servers, which store thermostat telemetry data); ¶¶ 234-235 (on claim element 1[b], the "one or more processors with circuitry and code designed to execute instructions" is integrated into the thermostat). EcoFactor has thus identified the SSPPU in this case to be "the Ecobee thermostat itself (i.e., the ecobee3, ecobee4, ecobee3 lite, or Vulcan thermostat), which connects to Ecobee's backend servers, and which may be connected to optional accessories such as Ecobee SmartSensors." *Id.* ¶ 60. Ecobee's experts have no contrary opinions on the definition of the SSPPU, and in fact Ms. Riley concedes that the proper smallest salable patent practicing unit in this case is the accused thermostats. Ex. B, November 5, 2021 Deposition of Michele Riley ("Riley Dep.") at 36:11-25. However, Ms. Riley's damage model is not based on profits from the "Ecobee thermostat itself," but rather only on one of the "optional accessories" to which this thermostat "may be connected": the SmartSensor.

The SmartSensor is not irrelevant to infringement, as it is one of several ways ecobee detects occupancy. *See, e.g.* Zeidman Rpt. ¶ 285 ("ecobee detects occupancy in at least three ways. First, an ecobee3, ecobee4, or Vulcan thermostat may detect occupancy using its built-in occupancy (motion) sensor; this is not an option for ecobee3 lite because that thermostat does not

have an integrated occupancy sensor. Second, any of the ecobee accused thermostats may receive occupancy data from one or more SmartSensors connected (via a network connection) to the thermostat, using the built-in occupancy (motion) sensor of the SmartSensor. Third, any of the ecobee accused thermostats may receive occupancy information from the server side as part of eco+ geo-fencing.").  But a focus on only some of the elements of the claims, or a sub-part of the SSPPU, such as that embodied by Riley's approach was rejected in *ThinkOptics,* where the defendant's damages expert limited the royalty base to what the defendant deemed to be the "inventive aspect" of the asserted patents, eliminating elements that were described in the claims but that existed in the prior art. 2014 WL 2859578, at *1-2. The court rejected that approach: "While it is sometimes necessary to apportion the smallest salable patent practicing unit to remove the value of unclaimed elements, Nintendo has not cited any precedent permitting the complete removal of the value of claimed elements." *Id.* Because it failed to "include the value of all claimed elements," Nintendo's damages opinion was not "'carefully tie[d] . . . to the claimed invention's footprint in the market place,'" and did not attempt to "'award the claimant damages adequate to compensate for infringement.'" *Id.*

Ms. Riley's analysis clearly does not reflect the economic footprint of the accused thermostats, as she removes the bulk of the claimed elements from her profit analysis, including the thermostat itself. Ms. Riley admits the SmartSensor is not coterminous with the accused products, or with the definition of the SSPPU.  She does not argue that apportionment to the sensor is necessary to distinguish infringing from non-infringing features, or even make the failed argument of the defendant in *ThinkOptics* that she is apportioning to the inventive element of the claims. Ms. Riley's only justification for her focus on the sensor is that "this sensor enables the Smart Home and Away feature" (Riley Rpt., ¶ 167; Riley Dep. 35:24-36:10), but

what she means by this is that the SmartSensor meets one element of the claims, in some accused products (and even these products also meet this same element in other ways). The accused thermostats themselves also "enable the Smart Home and Away feature", so the focus on the SmartSensor alone has no basis in the facts of the case.

Moreover, the SmartSensor meets one element of the claims for only one of the four accused models. The SmartSensor is part of the infringement read for only for one of the four accused ecobee thermostats, the ecobee3 Lite, which is the only accused product without a sensor built into the thermostat itself. Riley Rpt. ¶ 167. The other three models can be used with, but do not require, an external SmartSensor. *Id.* ¶ 29 (noting that the ecobee3, ecobee4, and Vulcan (also known as the ecobee5 or SmartThermostat) include wireless sensors). And even then, the ecobee3 Lite can infringe even without a SmartSensor. Zeidman Rpt. ¶ 60 ("I note that the ecobee3 lite does not itself include an occupancy sensor and is generally not sold with an ecobee SmartSensor. This means that the ecobee3 lite cannot perform certain methods of occupancy detection that would infringe the '382 patent, but the ecobee3 lite nonetheless infringes even on its own because it includes code designed to execute instructions that receive occupancy data stemming from the location of the customer's mobile device, as part of eco+ geo-fencing."). The fact that, for some of the accused products, multiple components are required for infringement cannot justify Ms. Riley's cherry picking of the least expensive component. And indeed, the fact that the SmartSensor is priced on average at ▮▮▮▮, while even the cheapest accused thermostat is ▮▮▮▮ on average, appears to be the true motivation for her opinion. Riley Rpt., Exhibit 9 line 1.[3]

---

[3] *See also id.* at line 8: projected operating profit of the accused thermostats ranges from ▮▮▮▮ ▮▮▮▮, compared to ▮▮▮ for the SmartSensor.

Moreover, this Court has held that in ruling on whether an expert opinion is admissible under Rule 702, "the Court must also consider whether, for a given conclusion, 'there is simply too great an analytical gap between the data and the opinion proffered.'" *ProTradeNet, LLC v. Predictive Profiles, Inc.*, No. 6:18-CV-00038-ADA, 2019 WL 6499488, at *2 (W.D. Tex. Oct. 11, 2019), quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). Thus, "'a district court may exclude evidence . . . where the reasoning or methodology is not sufficiently tied to the facts of the case.'" *Id.,* quoting *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015). That Ms. Riley bases her profit analysis not on the accused product, nor the SSPPU, but on a single component that is part of the SSPPU for only some accused products, renders her methodology untethered the facts of this case.

Ecobee may argue that *ThinkOptics* and the other cases cited above are distinguishable because they concern apportionment of the royalty base, while Ms. Riley's profit analysis is part of her opinions on the royalty rate. But the point of the caw law cited above is that an apportionment analysis must value the claims, and thus cannot start from or eliminate features and components covered by those claims. Ms. Riley's apportionment analysis is part of her opinions on the royalty rate, and her approach writes out most of what is covered by the claims in the ecobee3 Lite, and *all* of what is covered by the asserted claims for the other three accused models. The fact that the result is a per-unit royalty should not serve as a cover for her analysis, as it is methodologically nonsensical and untethered to the facts of this case.

### B. Ms. Riley Should Not Be Permitted to Rely on Usage Data That Was Withheld Until After the Close of Fact Discovery and Opening Reports, and of Which She Has No Understanding

As discussed above, Ms. Riley relies on ecobee's contention that accused units of its ebobee3 Lite model do not infringe unless they are connected to ecobee SmartSensors. Ms. Riley's report, after stating that she "understands that the ecobee3Lite does not include an

occupancy detector and thus does not infringe the '382 Patent without the additional purchase of a SmartSensor" goes on to claim that only ███ of "ecobee3 Lite installations are paired with one or more SmartSensors." Ex. A, Riley Rpt. ¶ 116. She therefore excludes ███ of ecobee3 Lite units from her royalty base. *Id.* However, ecobee never provided in discovery any evidence of the number of its customers who purchased an ecobee3 Lite thermostat but did not purchase the external sensor necessary, according to ecobee, to make many of the features of that model function. Ms. Riley's analysis is based on data in ecobee's possession that was not produced until the day Ms. Riley's report was served, despite being responsive to EcoFactor's discovery requests. As a result, EcoFactor and its experts were never able to inquire into the basis for and accuracy of these numbers.  Moreover, even Ms. Riley has no understanding of the basis for, or accuracy of, these numbers.   She simply cuts and pastes into her report a table from a spreadsheet about which she knows little to nothing.

Ms. Riley's calculation of ███ is based on a spreadsheet bates numbered ecobee000DCT2310.  Exhibit 7 to her report reproduces a table labeled ██████ from that document, to which she adds only the division of the number of ecobee3 Lite units by the number of those units purported to be "attached" to a sensor.  Ex. A, Exhibit 7 to the Riley Rpt.; Ex. D, ecobee000DCT2310; Ex. B, Riley Dep. at 31:2-12.   This document was first produced on October 22, 2021, the same day as the Riley Report.  Ex. E, 10/22/21 production email. The metadata for the document indicates it was created on October 19, 2021.  Ex. F.

EcoFactor requested this data from ecobee multiple times in discovery.  EcoFactor's Requests for Production sought, *inter alia*:

> All documents and things relating to use of the Accused Products, including without limitation testing logs, customer information, installation dates and locations, use logs, customer data, thermostat data, reports, alerts, and correspondence regarding any

person's use of any Accused Product. This should include at least representative information showing testing and use.

Ex. G, EcoFactor's First Set of Requests for Production to Defendant Ecobee, Inc., December 16, 2020, Request 26 at page 14. EcoFactor also requested all documents supporting any contention by ecobee "that any Accused Instrumentality does not infringe" (*id.,* Request 17 at page 13), and all documents ecobee contends are relevant to the calculation of damages (*id.,* Request 21 at page 14). EcoFactor's interrogatories also requested all bases for any contention that any Accused Product does not infringe any asserted claim (Interrogatory No. 3), and identification of any specific units ecobee contends should be excluded from the royalty base (Interrogatory No. 9). Ex. H, EcoFactor's First Set of Interrogatories to Defendant Ecobee, Inc., December 16, 2021, at 10-12.

Pursuant to Federal Rule of Civil Procedure 26, ecobee was required to identify all responsive information in response to EcoFactor's requests and interrogatories, and to supplement seasonably its responses with any new information. Federal Rule of Civil Procedure 37 (c)(1) addresses sanctions for failing to disclose and states, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Bitterroot Holdings, L.L.C. v. MTGLQ Inv'rs, L.P.*, 648 F. App'x 414, 419 (5th Cir. 2016). Moreover, the party facing sanctions under Rule 37(c) has the burden of demonstrating that a violation of Rule 26 was substantially justified or harmless. *See, e.g., Maguregui v. ADP, LLC*, No. EP-16-CV-121-PRM, 2017 WL 5473484 at *2 (W.D. Tex. Apr. 10, 2017); *Brown v. AT&T Serv. Inc.*, 236 F. Supp. 3d 1000, 1005 (S.D. Tex. 2017).

9

Ecobee's failure to produce the spreadsheet at issue, or the data reflected therein, until the day of its rebuttal report has no justification and has been far from harmless. EcoFactor repeatedly pressed ecobee during discovery for additional documents and data responsive to its requests related to damages. *See* Ex. I, Letter of July 9, 2021 (requesting additional documents related to damages and recently introduced accused features, and a response to Interrogatory No. 9); Ex. J, Letter of August 9, 2021 (same); Ex. K, Letter of August 15, 2021 (same). But while ecobee responded by producing additional spreadsheets in drips and drabs (*see, i.e.,* Ex. L, Email of August 26, 2021), it never produced the data at issue here. Had ecobee disclosed the data in discovery, EcoFactor could have investigated how ecobee purports to know whether a particular ecobee thermostat has been purchased or used with a SmartSensor, the source of the data in the document, and whether there are any gaps in or problems with this data. The document itself discloses none of these things. We do not even know who ███████ is, even though the table Ms. Riley pastes into her report as the basis for the ████ figure is labeled ██████████.

And none of this information is available from Ms. Riley. She did not speak to anyone at ecobee about the document. Ex. B, Riley Depo. at 30:18-23. A member of her staff may have, but she does not actually know whether that occurred, and there is no record of what information was provided in that conversation, if it occurred. *Id.* at 30:18-31:1. Ms. Riley does not know how ecobee knows whether a sensor has been "attached" to one of its thermostats by a customer. *Id.* at 31:13-16. She also does not know the source of the data, beyond that it comes from ██████████ *Id.* at 31:17-32:5.

Therefore, in addition to being excluded under Rule 37, Ms. Riley's opinion on this issue should be excluded under Federal Rule of Evidence 702. In the absence of any information about this document, Ms. Riley has no basis to rely on it. While data from a contemporaneous

internal document might be given some credit, on the theory that a business would generally want to rely on accurate information in its own operations, this document was clearly created for this litigation, as it did not exist until two days before her report.  Beyond the fact that ecobee gave it to her, Ms. Riley has no basis to assume that it is data regularly kept in the course of ecobee's business, or on which ecobee itself would find reliable.  She is acting purely as a pass-through for someone else's analysis, with no idea who that was or what that person's methodology was.  This is improper, and ground for exclusion.  *See Trustees of Bos. Univ. v. Everlight Elecs. Co*., 141 F. Supp. 3d 147, 149 (D. Mass. 2015) ("However, [an expert] cannot merely 'parrot' the out-of-court statements of employees, for an expert who does as much is merely a 'ventriloquist's dummy.'"); *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014). (Rule 703 "was never intended to allow oblique evasions of the hearsay rule" or to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.").

Ms. Riley relies on this late produced document to calculate the royalty base from which she determined her ultimate opinion on a reasonable royalty.  As her reliance on this document is improper, her royalty base, and the resulting calculation of a reasonable royalty, are also fatally deficient.

C.     **Ms. Riley's Discussion of Economically Non-Comparable Transactions and Valuations Should Be Excluded**
1.     **The Trane Asset Purchase Agreement**

For a damages expert, such as Ms. Riley, to present evidence of an agreement as part of her damages opinion, the Federal Circuit requires that "there must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case." *Uniloc U.S.A. v. Microsoft Corp*., 632 F.3d 1292, 1317 (Fed. Cir. 2011); *see also Finjan,*

*Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010) ("[U]se of past patent licenses under factors 1 and 2 must account for differences in the … economic circumstances of the contracting parties."). It is Ms. Riley's (and ecobee's) burden to establish the economic comparability of the agreements on which she relies. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009). Moreover, "[w]hen relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability … does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012).

In her report, Ms. Riley criticizes EcoFactor's damages expert David Kennedy for not addressing an asset purchase agreement between Trane U.S., Inc. ("Trane") and EcoFactor, presumably because the agreement included a patent license and covenant not to sue among its many sub-parts. Ex. A. Riley Rpt. ¶ 47.  Ms. Riley claims that ███████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████ and that ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████ *Id.*

By ████████████ and ████████████ Ms. Riley is referring to the purchase price in the asset agreement of ██████████. But even Ms. Riley admits that the acquisition included ████████████████████████████████████████████████████████████ while ██████████████████████████████████████████████████ *Id.* ¶ 45. And the Asset Purchase Agreement is clear that the ████████████ is consideration only for the purchased assets,

not for any patent rights.  Ex. M, EF_0665732-EF_0666057[4] at EF_0665737-738, Section 2.1

(defining ████████████ as including software software, documentation, copyrights, and

trade secrets); *id.* at EF_0665738, Section 2.2 (noting ████████████████████

████████████████████████ and defining ████████████ as ████████████

████████); *id.* at EF_0665739, Section 3.1 ████████████████████████

████████████████████████ (emphasis added).

The patent license itself is an exhibit to the Asset Purchase Agreement, required for

closing of the overall deal.  *Id.* at EF_0665741. Section 4.2(c) (requiring for the closing of the

Asset Purchase Agreement ████████████████████████████████████

████████████████████████"); EF_0665797 (attaching the Patent License

Agreement as Exhibit D to the Asset Purchase Agreement;  EF_0665798 ████████████

████████████████████████████████████████████████

████████████████████. The patent license discloses no royalty rate or

payment.   And Ms. Riley admits that the license is not comparable to that at the hypothetical

negotiation. Ex. B, Riley Dep. at 63:19-64:5.

Ms. Riley opines that the Trane agreement contains relevant evidence of a reasonable

royalty, but admits that it is not a comparable agreement.  It is an asset purchase agreement, with

all payments provided for therein directed to the purchased assets, and expressly not directed to

any patent rights. The patent license that was a subpart of this deal is by its own terms subsidiary

to this larger transaction.  The license at issue in the hypothetical negotiation, on the other hand,

would not be one subpart of a much larger deal, and thus cannot be comparable to the Trane

agreement. A license "directed to a large collaboration far more complicated than the patent" is

---

[4] Ms. Riley cites to the version of this document produced by Trane in an ITC matter.  As this
document was not produced in this case, EcoFactor here cites to a version produced in this case,
which is otherwise identical.

not comparable to one involving only "the patent covering the infringing ... tool at issue." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329, n.7 (Fed. Cir. 2009).

Moreover, Ms. Riley's claim that the consideration for Trane's purchase of assets is evidence of what EcoFactor would accept to license the patents in suit is untethered to the facts of the case, as patent rights are expressly excluded from the definition of these assets. "There is simply too great an analytical gap between the data and the opinion proffered." *ProTradeNet,* 2019 WL 6499488 at *2. Ms. Riley's opinions on the Trane agreement should therefore be excluded.

In addition, as part of this opinion, Ms. Riley discusses a presentation apparently made by EcoFactor to Trane during the negotiation of the Asset Purchase Agreement. Riley Rpt. ¶ 48. As part of this presentation, EcoFactor valued its patent portfolio at ▮▮▮▮▮▮. *Id.* Ms. Riley conducts an analysis whereby she divides this number by the number of EcoFactor's issued patents and pending patent applications, to conclude that ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 48-49. This analysis suffers from the same deficiencies as Ms. Riley's larger analysis of the Trane Asset Purchase Agreement: the ▮▮▮▮▮ figure was provided in the context of negotiations for a non-comparable agreement. Moreover, there are no facts supporting Ms. Riley's conclusion that ▮▮▮▮▮▮▮▮▮▮ any one of EcoFactor's patents could be purchased for ▮▮▮▮ ▮▮▮▮ *Id.* ¶ 49. *See also* Riley Dep. at 64:6-10 (claiming the valuation ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮). Ms. Riley admits that the valuation is not even an offer to sell EcoFactor's portfolio for ▮▮▮▮▮ outside the context of a larger deal. Riley Dep. at 66:3-8. The presentation is thus certainly not an offer to sell any one EcoFactor patent at any price. And Ms. Riley provides no evidence whatsoever supporting the

assumption inherent in her calculation that EcoFactor placed equal value on all of its patents and patent applications. This opinion, based on assumptions unsupported by facts and a document provided as part of a non-comparable transaction, should be excluded as well.

### 2.      The Bidgely Collaboration Agreement

Ms. Riley also uses what she calls a ███████████████████████████ ████ to criticize Mr. Kennedy's opinion.  Riley Rpt. ¶ 50.  But Ms. Riley herself describes the agreement as a ██████████████████ under which EcoFactor retained Bidgely to act as an account manager of EcoFactor's contract with Nevada Energy, and admits that a patent license is provided as part of that agreement solely to enable Bidgely provide these services.  *Id.*  Ms. Riley does not contend that this agreement is comparable to the hypothetical negotiation.  Riley Dep. at 70:18-71:2.  Ms. Riley should therefore be prohibited from opining at trial that the Bidgely agreement is relevant to damages in this case, and even more importantly should be prohibited from presenting the agreement as a relevant ██████████████████████ as she calls it in her report.

### 3.      Common Stock Valuations

Ms. Riley also relies on ██████ valuations of EcoFactor's common stock dating from 2017 and 2020, opining that ████████████████████████████████████████ ███████████████████████████████████████████████ Riley Rpt. ¶¶ 161-162.  Reliance on valuation of a company as a whole is not an acceptable method of valuing that company's patents.  *See Mformation Techs., Inc. v. Rsch. in Motion Ltd.*, No. C 08-04990 JW, 2012 WL 2339762, at *5 (N.D. Cal. June 7, 2012) (valuation of possible target for acquisition not admissible insofar as they speak not to the value of the particular patent at issue, but rather to the possible valuation of the company as a whole).  It is particularly problematic in

this case, as the valuations on which Ms. Riley relies expressly state that they do not account for EcoFactor's assets or income. Ex. N, EF_0895548 at 0895557 ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ They are instead

based on the high-level financial results of ████████ companies.  Riley Dep. at 104:1-105:24. There is no evidence that these results are related to these companies' patent holdings, or that these companies' patent holdings are in any way comparable to EcoFactor's.  Riley Dep. at 85:25-86:8. There is therefore no basis whatsoever for Ms. Riley's reliance on this valuation to cap the value of EcoFactor's patents.

## III.    CONCLUSION

For the foregoing reasons, the Court should exclude Ms. Riley's deficient opinions on a reasonable royalty, and the conclusions based thereon, at paragraphs 14, 116, 118, 167-168, and 217, and exhibits 1, 1.1, 1.2, 1.3, and 7, as well and the parts of paragraphs 173 and 214 concerning her rate for the '382 patent.  In addition, her rebuttal opinions relying on non-comparable agreements and valuations at paragraphs 44-50 and parts of paragraph 12 and 43 should be excluded.


Dated:  November 19, 2021                     Respectfully submitted,


                                              /s/ Reza Mirzaie
                                              Reza Mirzaie
                                              Marc A. Fenster
                                              Kristopher Davis
                                              RUSS AUGUST & KABAT
                                              12424 Wilshire Boulevard 12th Floor

Los Angeles, California 90025
Tel: 310-826-7474
Fax: 310-826-6991
rmirzaie@raklaw.com
mfenster@raklaw.com
kdavis@raklaw.com

***Attorneys for Plaintiff EcoFactor, Inc.***

## **CERTIFICATE OF CONFERENCE**

I certify that my firm, including my colleagues Kris Davis and Jason Wietholter, conferred with Defendant's counsel regarding the foregoing Motion to Exclude on November 16, 2021. Defendant's counsel confirmed that their client opposes the requested relief.

/s/ Reza Mirzaie

## **CERTIFICATE OF SERVICE**

I hereby certify that the counsel of record have been served electronically on November 19, 2021.

/s/ Reza Mirzaie